# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **ALECK L. BLACKWELL** <br>     **LA. DOC #467792** <br> **VS.** | **CIVIL ACTION NO. 09-0968** <br><br> **SECTION P** <br><br> **CHIEF JUDGE JAMES** |
| **MADISON CORRECTION CENTER** | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Aleck L. Blackwell, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on June 11, 2009. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Madison Parish Corrections Center (MCC), Tallulah, Louisiana and he complains that he is being denied vocational training and the right to freely exercise his chosen religion. He also complains of conditions of confinement causing medical problems and abuse of inmates on the part of corrections staff. Finally, he complains that items of "legal mail" were inspected without his knowledge or approval. Plaintiff prays for compensatory damages in the amount of $8 million for "mental aguish this facility putting me through to practice my religion and obtain a vocational trade." Thus far, he has named only one defendant, the MCC.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

**Background**

*1. Original Complaint [Doc. 1]*

Plaintiff is an inmate in the custody of the LDOC. According to his complaint, he "... came to the Madison Correction Center in hope to obtain a vocational trade and practice my religion Jehovah's Witness..." He implied that he was formerly incarcerated at the Franklin Parish Detention Center and requested a transfer to MCC in order to obtain those benefits. He also complained that "... this facility open the mail that you sent without my present..."

He complained that on June 2, 2009, he and his fellow inmates began experiencing head aches which led to nausea and vomiting. Their complaints to the guards were not heeded and the facility has still been unable to determine what caused this outbreak.

Plaintiff also complained that the urinals are in close proximity to the dining area and that inmates are confined to the dorms all but 2 days per month. Finally, he complained that the corrections officers use "abusive language" and "happily" beat or Tazer the inmates instead of writing offenders up with disciplinary rules violations. As noted above he prayed for an award of $8 million "... restatution (sic) for the mental anguish..." and named only a single defendant – the MCC.

*2. Amended Complaint*

On September 21, 2009, plaintiff was directed to amend his complaint. Among other things, plaintiff was advised to provide: "(1) the name(s) of each person who allegedly violated plaintiff's constitutional rights; (2) a description of what actually occurred or what each defendant did to violate plaintiff's rights; (3) the place and date(s)that each event occurred; and (4) a description of the alleged injury sustained as a result of the alleged violation." He was further advised, "Plaintiff has named the facility itself as his sole defendant; however, it does not appear that the MCC is a juridical entity capable of being sued." [Doc. 7]

On October 2, 2009, plaintiff submitted a response to the memorandum order. However, the amended complaint provided little additional detail and instead provided a disjointed restatement of the original complaint. Read liberally, this amended complaint alleged:

Plaintiff, an LDOC inmate, was housed at the Franklin Parish Detention Center. His repeated complaints concerning his inability to practice the Jehovah's Witness religion and his inability to obtain vocational training resulted in his transfer to the MCC on April 6, 2009.

Upon his arrival, plaintiff was assigned to Dorm C. He soon discovered that MCC offered neither vocational training nor Jehovah's Witness services. Plaintiff complained to Warden Shivers and requested a transfer to another facility. His grievance was ignored. Plaintiff then sent additional grievances to Warden Shivers and Major Johnson. When he received no response he sent additional grievances complaining about his inability to practice his religion and to obtain vocational training. These grievances were also ignored. He also "... wrote my religion a letter but no response from Warden Shivers..."

Upon his arrival, an unidentified guard cautioned plaintiff that if he wrote a grievance against him, he would hurt the plaintiff. This guard, however, left the employ of MCC and began working for the local police department.

Plaintiff nevertheless claimed that he was in fear for his life because of "... the abuse that I've seen these officers impose on us inmates..." Plaintiff submitted a grievance to the Chief of Operation complaining about the beating, masing (sic), tazing, and the unprofessional conduct these officers continue to impose." More specifically, plaintiff claimed that Sgt. Eugene Whitney and Sgt. Tavarius Johnson "... use to take our television, microwave, our property, and threaten us..." Plaintiff claimed that he observed "both night shift" punch inmates and slap them. Plaintiff claimed that these officers "... was taken inmates out, a few minutes later they came in choking

3

and coughing..." He was then taken out with another inmate who was "hit ... with the taze gun." Plaintiff was threatened with harm. He also claimed that he was threatened with harm for interrupting the corrections officer's count.

On unspecified dates plaintiff received from Sgts. Turner and Anderson opened envelopes containing documents from this Court and from Louisiana's Twenty-Second Judicial District Court.

Plaintiff alleged that on August 2, 2009 Sgt. Whitney "sprayed mase on the inmates of Dorm C for no reason at all."

Plaintiff complained that no grievances are answered. He complained that cold food is served and inmates must eat in the same area where they urinate and defecate.

Finally he complained that he "... is in other building same address, administration, but a more visous (sic) set of officers, no Jehovah Witness Service, I'm not obtaining a vocational trade, still, officers still open legal mail, tazing, masing, beating, and just don't care ..." Plaintiff alleged that on September 26, 2009 Sgt. Hudson "handed me this envelope open up..." and when plaintiff complained, Hudson threatened him with physical harm.

## *Law and Analysis*

### *1. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2

4

F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint was deemed insufficient. Plaintiff was instructed on the law and directed to amend his complaint to provide additional facts. Plaintiff amended his complaint, but, as was shown, his amended complaint did not cure the deficiencies previously noted. Nevertheless, accepting all of plaintiff's allegations as true, the undersigned concludes, for the

reasons stated hereinafter, that his complaint should be dismissed as frivolous and for failing to state a claim for which relief may be granted.

## 2. Juridical Person

Plaintiff originally sued the MCC. Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether this corrections facility has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24. MCC is apparently a parish corrections facility operated by the sheriff of Madison Parish. [Compare La. Atty. Gen. Op. No. 03-0437, 2003 WL 23146623; see also, *Langley v. City of Monroe*, 582 So.2d 367 (La. App. 2d Cir. 1991) and La. R.S.15:702 (The parish governing authority is charged with the duty to provide a good and sufficient jail and to provide for the physical maintenance of parish jails and prisons; however, the administration of such jails is within the province of the sheriff who has the duty of operating the jail and insuring that prisoners are properly cared for, fed and clothed.)]. Plaintiff's suit against this non-juridical person is frivolous.

## 3. Practice of Religion

### a. First and Fourteenth Amendments

Plaintiff implies that his right to practice his religion was curtailed. Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the

exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. See *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice; (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level; (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff implies that his right to freely exercise his religion was impaired; however, he always and only has complained only that the facility offers no Jehovah's Witness service. With regard to the first prong of the *Turner* test, plaintiff has not alleged that prison officials have <u>prohibited</u> him from practicing his religion. Indeed, according to the available evidence, plaintiff has never been prohibited from practicing his religion. The second and forth prongs of the *Turner*

test, address whether or not "alternative means" of practicing his religion have been made available to the plaintiff. In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 861 (5th Cir.2004); *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004). Plaintiff has not claimed that he was denied the right to practice his religion at any time. In *O'Lone v. Estate of Shabazz, supra*., the inmate-plaintiffs complained that they were not allowed to attend the weekly Jumah services because of their assignments to work details outside the main prison grounds. *O'Lone v. Estate of Shabazz*, 482 U.S. at 345-46. The Supreme Court considered the evidence supplied by the prison administration regarding security needs, rehabilitative needs, and the impact of alternative accommodations; this evidence was evaluated in the light of those rights actually retained by the inmates to practice their religion. The Court then noted that the plaintiff- inmates were not deprived of all forms of religious exercise. Based upon these facts, the Supreme Court held that the "ability on the part of [the inmates] to participate in other religious observances of their faith supports the conclusion that the restrictions at issue here were reasonable." *Id.* at 352. In other words, prison administrators are obliged only to provide inmates with "reasonable opportunities ... to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments." *Id.* at 322 n. 2, 92 S.Ct. 1079.

Plaintiff has not shown that his right to practice his religion was in any way unconstitutionally curtailed and his claim must be dismissed as frivolous.

### b. RLUIPA

Liberally construed, and giving plaintiff the benefit of the doubt, it may be assumed that

8

he also intended to allege a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) [see 42 U.S.C. §2000cc *et seq*.]. RLUIPA mandates that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

The Supreme Court has noted that RLUIPA protects the rights of prisoners who are unable to freely attend to their religious observances and who are dependant on the government's permission and accommodation. *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

In order to state a claim under RLUIPA, the prisoner must show that challenged government action places a substantial burden on the exercise of his religion. If the prisoner carries the burden of proof on this issue, then the government must demonstrate some compelling interest warranting the challenged action. Under RLUIPA, a "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id. § 2000cc-5(7)(A)*. Thus, religious services, religious education, and dietary principles all qualify as "religious exercises."

While the statute does not define "substantial burden," Fifth Circuit jurisprudence has defined it as follows in the context of the RLUIPA, "... a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*,

393 F.3d 559 (5th Cir. 2004) at 569-70.  Here, although he was offered the opportunity to do so, plaintiff has not alleged any action or regulation of the prison which places a substantial burden on the practice of his religion. It may be assumed in the absence of any allegation to the contrary, that there are simply no other co-religionists of the plaintiff incarcerated at MCC,[1] and, that there are no Jehovah Witness chaplains available to conduct weekly services.[2] Compare *Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004).

In other words, plaintiff's practice of religion claim fails under both the Constitution and RLUIPA because plaintiff has failed to state a claim for which relief may be granted.

### 3. Vocational Training

#### a. Due Process Concerns

Plaintiff mistakenly  assumes that he has a Constitutional right to educational or vocational programs.  In order to state a Constitutional claim for either a substantive or procedural due process violation, the plaintiff must demonstrate that he was "denied a cognizable liberty or property interest clearly established either by state law or the United States Constitution." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir.2000); accord *Sandin v. Conner*, 515 U.S. 472, 481-83, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (a prisoner has a liberty interest only in "freedom[s] from restraint ... impos [ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); *Bryan v. City of Madison*, 213

---

[1] Indeed, plaintiff is quick to allege examples where prison guards have abused his fellow inmates, however, his complaints make no mention of any other inmates being denied the right to participate in Jehovah's Witness' services.

[2] As noted above, plaintiff appears to allege that he "wrote my religion a letter" but received no response. [Doc. 8, p. 1]

F.3d 267, 274 (5th Cir.2000), *cert. denied*, 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001)(property interest). "While no State may deprive any person of life, liberty or property, without due process of law, it is well-settled that only a limited range of interests fall within this provision. Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (quotation and citation omitted).

Inmates do not a have a protected property or liberty interest in prison employment. *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir.1989) ; *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.1988). Nor do prisoners have a constitutional right to participate in drug treatment programs. See *Moody v. Doggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). More importantly, the "state has no constitutional obligation to provide basic educational or vocational training to prisoners." *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir.1988). To the extent that plaintiff has alleged a violation of due process with regard to the lack of vocational rehabilitation programs at MCC, his claim is frivolous.

### b. Eighth Amendment Concerns

To the extent that plaintiff contends that the prison's failure to provide vocational training amounts to cruel and unusual punishment in violation of the Eighth Amendment, his claim fares no better. The lack of a rehabilitative programs does not by itself constitute cruel and unusual punishment, nor does the Eighth Amendment require the provision of every amenity needed to avoid mental, physical, or emotional deterioration. See *Alberti v. Klevenhagen*, 790 F.2d 1220, 1228 (5th Cir. 1986), citing, *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir.1977), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978).

Plaintiff's claims are manifestly frivolous and dismissal on that basis is recommended.

*4. Excessive Force*

Plaintiff complains of various instances where excessive force was used by prison guards against his fellow inmates; however, in no instance has he alleged that he was the victim of such force. At worst, plaintiff was "threatened" with the use of force.

Plaintiff lacks standing to assert the general claim of excessive force with respect to inmates other than himself. To satisfy the standing requirement, a plaintiff must demonstrate: (1) an injury in fact; (2) that is traceable to the defendant's challenged conduct; and (3) that is likely to be redressed by a favorable decision of the district court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The injury must be "actual or imminent, not 'conjectural or hypothetical.' "*Id*. (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). While the actions of the guards, if true, is deplorable, plaintiff lacks standing to assert the claim.

Plaintiff implies that he was threatened with harm should he continue to complain. He has not, however, alleged facts sufficient to state a claim for retaliation. It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the constitution. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation.

Retaliation claims under § 1983 are permitted, indeed encouraged, in order to ensure that prisoners are not discouraged from exercising rights guaranteed by our Constitution. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir.2006). Nevertheless, some so-called retaliatory acts, even

those clearly motivated by retaliatory intent, are so *de minimis* that they would not deter an ordinary person from further exercise of his rights. *Id.* Such *de minimis* retaliatory acts do not rise to the level of constitutional violations and thus cannot form the basis of a § 1983 claim. *Id.* The retaliatory adverse act complained of herein were mere threats and did not deter plaintiff from exercising his rights. Clearly, these "adverse acts" were *de minimis* and would be unlikely to, and indeed, did not, discourage plaintiff from exercising his right to complain about conditions of confinement.

Finally, at worst, plaintiff was threatened when a corrections officer "put[ ] his hands on me and said he will mess me up.." In the excessive-force context, "[w]hen prison officials maliciously and sadistically use force to cause harm," the Eighth Amendment is violated "whether or not significant injury is evident." *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)."That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' " *Id.* at 9-10, 112 S.Ct. 995 (quoting *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078 (1986). A *de minimis* use of force, <u>such as a slap or a shove, does not implicate constitutional concerns</u>. *Id.*; *Bell v. Wolfish*, 441 U.S. 520 (1979); *Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir.1997) (bruised ear lasting for three days after guard twisted inmate's ear and held his arm behind his back was *de minimis* and did not state a claim for excessive force); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir.1993) (inmate who suffered no injury when sprayed with a fire extinguisher was exposed to a *de minimis* use of force and his claim was properly dismissed as frivolous).

Thus, plaintiff's complain concerning the use of force must be dismissed as frivolous.

*5. Conditions of Confinement*

Plaintiff has also complained about the conditions of confinement. Complaints about prison conditions are also analyzed under the Eighth Amendment's proscription of cruel and unusual punishment. The Eighth Amendment does not prohibit punishment; however, it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. See *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).

Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. *Harper,* 174 F.3d at 719. First, there is an objective requirement that the plaintiff demonstrate conditions "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, under a subjective standard, it must be shown that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement. *Woods*, 51 F.3d at 581. "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive

and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture – the infliction of pain without penological purpose – such conditions may be considered as cruel and unusual punishment under the Eighth Amendment. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

The conditions alleged in plaintiff's complaint simply do not rise to the level of Eighth Amendment violations. He complained that on June 2, 2009, he and his fellow inmates began experiencing head aches which led to nausea and vomiting. Their complaints to the guards were not heeded and the facility has still been unable to determine what caused this outbreak. He also complained that the urinals are in close proximity to the dining area and that inmates are confined to the dorms all but 2 days per month. Such claims, standing alone, simply do not rise to the level of cruel and unusual punishment as defined by the jurisprudence, because, with regard to each of these claims, plaintiff has not alleged that he sustained anything other than *de minimis*[3] harm or injury as a result to his exposure to the complained of conditions. The only complaint of injury was a conclusory claim that he and others, including prison guards, experienced headaches, nausea and vomiting for one day.

Federal courts, with regard to prisoner suits filed *in forma pauperis*, are authorized "... to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are

---

[3] It has been suggested that "...an appropriate *de minimis* standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice?" *Luong v. Hatt*, 979 F.Supp. 481, 486 (N.D. Tex. 1997). A more than *de minimis* physical injury, as defined by § 1997e(e) and the jurisprudence, "... is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care." *Id.*

clearly baseless." *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). However, even if accepted as true, he has alleged no more than a *de minimis* injury resulting from his exposure to this condition.

In order to recover damages for exposure to dangerous conditions, a prisoner must show that he suffered an actual physical injury. See 42 U.S.C. § 1997e(e); compare *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir.2003, *cert. denied*, 541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004). Plaintiff, at worst, was inconvenienced and not injured or otherwise harmed by the conditions complained of; these conditions cannot rationally be equated to "cruel and unusual punishment" since the deprivations alleged were not so extreme as to "... rise to a level that results in physical torture..." *Bradley v. Puckett*, 157 F.3d at 1025. The injuries sustained are all *de minimis*, at worst. Plaintiff's Eighth Amendment conditions of confinement claims are frivolous.

### 6. Legal Mail

Finally, in his initial complaint, plaintiff alleged that "... this facility open the mail that you sent without my present..." In his amended complaint he alleged that on September 26 he was handed an opened envelope from the Court. Plaintiff thus implies that the defendants have interfered with his legal mail; however, as a factual matter, he has only claimed that the defendants opened and inspected his mail. When afforded the opportunity to flesh out these allegations, plaintiff alleged another isolated incident in which he received an open envelope. Plaintiff has not established that the contents of these envelopes were "legal mail;" clearly, plaintiff has never alleged that these letters contained privileged correspondence from plaintiff's attorney. Thus, plaintiff has not established that the defendants did anything more than open and inspect these envelopes for contraband, an activity which they are allowed by law to perform. See

*Brewer v. Wilkinson*, 3 F.3d 816, 820-821 (5th Cir. 1993).

Further, to the extent that plaintiff maintains that the defendants' acts interfered with his right of access to the courts, he has also failed to state a claim. An inmate alleging denial of access to the courts must demonstrate an actual injury stemming from defendants' allegedly unconstitutional conduct. *Lewis v. Casey*, 518 U.S. 343, 351-54, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). To prevail on such a claim, a prisoner must show that his legal position has been prejudiced. See *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988). He must allege and ultimately demonstrate that he was prevented from raising a meritorious legal issue. *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir.1998). Plaintiff has not shown that his legal position has been prejudiced by the defendants' alleged interference with his legal mail. Thus, plaintiff's final claim should be dismissed as frivolous.

### 7. Conclusion and Recommendation

In short, plaintiff's claims are frivolous and dismissal on that basis is recommended. Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b),**

**shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, December 4, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE